## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## NORTHERN DIVISION

**CHRISTOPHER WISE**                                                                 **PETITIONER**

**V.**                                              **CIVIL ACTION NO. 3:20-CV-346-DPJ-LGI**

**WARDEN SCOTT MIDDLEBROOKS**                                         **RESPONDENT**

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Christopher Wise seeks federal habeas relief under 28 U.S.C. § 2254. After a review of the entire record and all the applicable law, the undersigned recommends that his petition be dismissed with prejudice.

### Factual and Procedural Background

In 2017, a Hinds County jury found Wise guilty of manslaughter in the death of Jerrell Brown, and he was sentenced to twenty years in the custody of the Mississippi Department of Corrections (MDOC). The relevant facts are accurately described in the state court's opinion and are incorporated verbatim here.

On the night of January 25, 2015, in Jackson, Mississippi, Marcus Ware testified that he received a call from Brown asking to buy drugs. Ware told Brown to come to his apartment and purchase the drugs from Wise. Brown came to the apartment, bought ecstasy pills and marijuana from Wise, and then left the apartment. Later, Brown called Ware complaining that the pills were not effective. Ware said that Brown indicated he was coming back to Ware's apartment. Ware stated that Wise waited on Brown, but left when Brown failed to show. Shortly after, Wise called Ware and told him that he had

shot Brown. According to Ware, Wise implied that Brown had tried to rob him. Wise then told Ware, "You ain't seen nothing. You don't know nothing."

Benard Vaughn, Brown's cousin, testified that he and Brown were with friends who wanted ecstasy. Brown then called Ware and asked for help in purchasing ecstasy and marijuana. Ware told them to come to his apartment and buy the drugs from Wise. Later at Ware's apartment, Brown purchased $100 worth of ecstasy pills and marijuana from Wise. According to both Vaughn and Wise, Brown pulled a large amount of cash from his pocket in order to pay for the drugs. Vaughn stated that he and Brown left to share the drugs with friends at a nearby apartment.

After several hours, Vaughn went to wait for Brown in Brown's car. While waiting in the passenger seat, Vaughn fell asleep. He was roused by Brown, who told Vaughn that they were leaving. Vaughn fell back asleep and remained asleep until a police officer woke him and informed him that Brown had been shot. Vaughn then saw Brown's body slumped over in the driver's seat of the car. Vaughn testified that he knew Brown had called Ware complaining that the pills Wise had sold him were not effective. Vaughn also stated that Brown was not carrying his weapon that night.

Alvin McDaniel, a patrolman with the Jackson Police Department (JPD), responded to the scene. McDaniel saw a white car with the driver's side door ajar. A deceased male, later determined to be Brown, was slumped over in the driver's seat with one leg partially protruding from the car. McDaniel noticed another male in the passenger's side seat who was sleeping. McDaniel also found a holstered gun on the driver's side floorboard.

Detective Ella Thomas with JPD testified that she investigated Brown's murder. Detective Thomas noted that Brown's car had blood on the outside and inside of the driver's side door. Brown's holstered gun was found on the floorboard under his legs. Three shell casings from a .9 mm handgun were found at the scene.

After locating Wise several months later, Detective Thomas interviewed him. Wise told her that Brown had threatened him with a gun, but that he was able to grab his gun and shoot at Brown over his left shoulder. Wise said Brown then ran away.

Robert Watts, a crime scene investigator with JPD, testified that he recovered three spent shell casings from the scene and that the location of the shell casings indicated the shooter was moving. Watts testified that "[t]he shooter started in the parking lot, moved towards the sidewalk and then to the rear of the vehicle as they were firing."

The forensic pathologist for the State testified that Brown died from two gunshot wounds to his back. Both shots entered Brown's back—one exited his left chest area and the other through the top right of his shoulder. The pathologist opined that the gun was fired from more than a few feet away.

Wise testified in his own defense. He stated that when he left Ware's apartment, Brown was waiting for him and acting aggressively. He testified that Brown placed his gun on the back of Wise's head and told Wise to be still. Wise then grabbed his gun from his car and fired shots over his left shoulder. Wise stated he "fired an initial burst of shots over my left shoulder." At that point, Brown began to run, but Wise continued to fire his gun. Wise never saw Brown's gun.

3

Based on the evidence presented at trial, Wise's self-defense theory was rejected, and he was convicted of culpable negligence manslaughter. Aggrieved, Wise appealed his conviction alleging trial errors, discovery and speedy trial violations, and insufficiency of the evidence. Finding no error, the Mississippi Court of Appeals affirmed Wise's conviction and sentence. *Wise v. State,* 263 So. 3d 688 (Miss. Ct. App. 2018). Subsequent petitions for rehearing and certiorari were denied. Later, Wise initiated state post-conviction proceedings but his claims were found to be procedurally barred and without merit by the Mississippi Supreme Court on post-conviction review. Wise now brings the instant petition and asserts as grounds for relief the same issues rejected in state court, alleging in nearly every claim that he was deprived of due process violations and effective assistance of counsel (as stated by Wise):

| Ground One: | Petitioner was denied due process where his indictment was fatally defective and requires reversal of his conviction. |
|---|---|
| Ground Two: | Petitioner is actually innocent of culpable negligence manslaughter and the verdict of guilty for culpable negligence manslaughter is manifest injustice where, viewing the evidence in the light most favorable to the State, the evidence does not support a verdict for culpable negligence manslaughter, and counsel was ineffective in failing to make this argument at trial [and] on direct appeal and/or in failing to object to an instruction on culpable negligence manslaughter. |
| Ground Three: | Petitioner was denied his right to due process, denied his statutory right to a speedy trial, and denied the right to effective assistance of counsel to protect these denied rights, and such requires the conviction to be vacated. |
| Ground Four: | Petitioner was denied his right to due process, denied his right to a fair trial, and denied the right to effective |

assistance of counsel to protect these denied rights, where counsel allowed improper use of prejudicial evidence of other uncharged crimes and such requires the conviction to be vacated.

Ground Five:    Petitioner's counsel was ineffective in failing to seek [a] hearing on [the] suppression of pre-trial statement that included statements which were prejudicial to the defense where the pre-trial statement was obtained in violation of right to counsel.

Ground Six:    Petitioner was denied due process, his right to a fair trial, direct appeal and effective assistance of counsel where counsel failed to properly correct the court on appeal regarding disclosure of victim's criminal background, and where trial counsel failed to seek a proper continuance after the requested material was not provided where both the trial judge and district attorney agreed that petitioner was entitled to such and where such failure broke down and detracted from his self-defense theory.

Ground Seven:    In light of this court's adoption of the *Daubert* Rule as the standard for admissibility of expert witness testimony, the petitioner was denied due process of law when the expert was allowed to testify and give damaging evidence that shatters h[i]s defense without compliance with the rule of law in *Daubert* and counsel was ineffective in failing to object to the expert testimony.

Ground Eight:    Petitioner was denied the right to effective assistance of counsel where counsel failed to have the jury instructed on the proper and limited use of evidence of flight where that evidence of flight was prejudicial to the defense.

Ground Nine:    Petitioner's conviction was obtained in violation of due process where the evidence was insufficient to support a finding that the Petitioner did not act in necessary self-defense.

Ground Ten:    Petitioner's conviction was obtained in violation of the constitutional right to due process and right to a fair trial where the State denied him discovery material to his defense and ordered by the trial court

Having reviewed the record and all the applicable law, the undersigned submits that Wise is not entitled to relief on any of the aforementioned claims and the instant petition should be dismissed with prejudice.

### Discussion

The Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), codified at 28 U.S.C. § 2244(d), precludes this Court from granting Petitioner federal habeas corpus relief on claims adjudicated on the merits unless that adjudication:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). This court reviews questions of law as well as mixed questions of law and fact pursuant to 28 U.S.C. § 2254(d)(1) of the AEDPA, while questions of fact are reviewed under 28 U.S.C. § 2254(d)(2).

Under the first prong, the clauses "contrary to" and "unreasonable application of" are independent bases for granting federal habeas relief. *Williams v. Taylor*, 529 U.S. 362, 405, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000). A state court's decision is "contrary to" federal law if it contradicts Supreme Court precedent or reaches a different result on materially indistinguishable facts. *Id.* "[C]learly established Federal law includes only the holdings of the Court's decisions," *White v. Woodall*, 572 U.S. 415, 419, 134 S. Ct. 1697, 188 L. Ed. 2d 698 (2014) (internal citation and quotation marks omitted). Under the "unreasonable application" clause, a federal habeas court may grant relief if the state court

"correctly identifies the governing legal principle" but then "unreasonably applies it to the facts of the particular case." *Bell v. Cone*, 535 U.S. 685, 694, 122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002). The state court's decision must be objectively unreasonable, not merely erroneous or incorrect. *Wood v. Allen*, 558 U.S. 290, 301, 130 S. Ct. 841, 175 L. Ed. 2d 738 (2010).

AEDPA's second prong requires that federal courts defer to a state court's factual determinations unless they are based on an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Morales v. Thaler*, 714 F.3d 295, 301 (5th Cir. 2013). Deference is critical because federal courts have no authority to grant habeas corpus relief simply because "we conclude, in our independent judgment, that a state supreme court's application of [federal] law is erroneous or incorrect." *Catalan v. Cockrell*, 315 F.3d 491, 493 (5th Cir. 2002); *Jasper v. Thaler*, 466 F. App'x 429, 435 (5th Cir. 2012). Thus, we presume the state court's determination of a factual issue is correct, unless a petitioner rebuts the presumption with clear and convincing evidence. *See* 28 U.S. C. § 2254 (e)(1).

### Ground One (Procedurally Defaulted Claim)

In ground one, Wise claims that his indictment was defective because the State failed to include the language "not in necessary self-defense." The Mississippi Supreme Court ruled that this claim, however, was procedurally barred by res judicata on post-conviction review under Miss. Code. Ann. § 99-39-21 (West) (2)-(3).[1] Though these

---

[1] Miss. Code. Ann. § 99-39-21 (2)-(3) provides:

statutory provisions "prevent[ ] the re-litigation of claims" before the state supreme court, they do not prevent federal review of a habeas claim, "as long as the claim was not procedurally barred for some other reason." *Jackson v. Epps*, 447 F. App'x 535, 544 (5th Cir. 2011); *See Cone v. Bell*, 556 U.S. 449, 129 S. Ct. 1769, 1781, 173 L. Ed. 2d 701 (2009). Notably, Wise's claim is subject to more than one procedural bar. Although Wise challenged the sufficiency of the indictment under a different theory on direct appeal, his failure to present this precise theory procedurally bars his claim under Miss. Code. Ann. § 99-39-21(1).[2]

Under the procedural default doctrine, a federal court may not consider a habeas claim when the state court rejected that claim on an independent and adequate state law ground. *Martin v. Maxey*, 98 F.3d 844 (5th Cir. 1996). The Fifth Circuit has long considered Miss. Code Ann. § 99-39-21(1), particularly, to be an adequate state procedural bar because Mississippi courts have strictly and regularly applied it to similar

---

(2) The litigation of a factual issue at trial and on direct appeal of a specific state or federal legal theory or theories shall constitute a waiver of all other state or federal legal theories which could have been raised under said factual issue; and any relief sought under this article upon said facts but upon different state or federal legal theories shall be procedurally barred absent a showing of cause and actual prejudice.

(3) The doctrine of res judicata shall apply to all issues, both factual and legal, decided at trial and on direct appeal.

[2] Miss. Code. Ann. § 99-39-21(1) provides that the:

[f]ailure by a prisoner to raise objections, defenses, claims, questions, issues or errors either in fact or law which were capable of determination at trial and/or on direct appeal, regardless of whether such are based on the laws and the Constitution of the state of Mississippi or of the United States, shall constitute a waiver thereof and shall be procedurally barred, but the court may upon a showing of cause and actual prejudice grant relief from the waiver.

claims. *Stokes v. Anderson*, 123 F.3d 858, 860 (5th Cir. 1997). Wise can obtain federal habeas corpus review of his barred claims, nonetheless, if he can establish cause for the default and actual prejudice, or if he can show that failure to consider the claims will result in a fundamental miscarriage of justice, but he has made no such showing here.

Even if Wise could overcome the procedural bar, the sufficiency of a state indictment is not a matter of federal habeas relief unless it is shown that the indictment was so defective that the convicting court did not have jurisdiction. *Wood v. Quarterman*, 503 F.3d 408, 412 (5th Cir. 2007) (citation and internal quotation marks omitted). "State law dictates whether a state indictment is sufficient to confer a court with jurisdiction," *Williams v. Collins*, 16 F.3d 626, 637 (5th Cir. 1994) and where, as here, the "state courts have held that an indictment is sufficient under state law, a federal court need not address that issue." *Evans v. Cain*, 577 F.3d 620, 624 (5th Cir. 2009); *McKay v. Collins*, 12 F.3d 66, 68 (5th Cir. 1994). Wise's indictment claim is procedurally barred from federal review.

### Ground Two (Actual Innocence)

In Ground Two, Wise alleges that he is actually innocent and that but for counsel's ineffectiveness, he would not have been convicted because the evidence could not support his conviction. A freestanding actual innocence claim, however, fails to present a cognizable claim for federal review as it is not itself a constitutional claim, but a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits. *Floyd v. Vannoy*, 894 F.3d 143, 155 (5th Cir. 2018); *White v. Thaler*, 522 F. App'x 226 (5th Cir. 2013), *as revised* (Apr. 3, 2013)

(unpublished) (quoting *Herrera v. Collins*, 506 U.S. 390, 404, 113 S. Ct. 853, 122 L. Ed. 2d 203 (1993)); *see also Kinsel v. Cain*, 647 F.3d 265 (5th Cir. 2011). As for Petitioner's claim that the evidence could not support his conviction, this claim was dismissed as procedurally barred on post-conviction review because it was previously raised on direct appeal and found to lack merit. Miss. Code. Ann. § 99-39-21 (2)-(3). Petitioner's ineffective assistance of counsel claim was similarly found to lack merit on post-conviction review. As discussed below, neither finding was contrary to nor on an unreasonable application of clearly established federal law.

### Ground Nine (Sufficiency of the Evidence)

In ground nine, Wise re-urges his direct appeal claim that the evidence could not support a manslaughter conviction. A sufficiency-of-the-evidence claim is based on federal due process principles, requiring the State to prove each element of the offense beyond a reasonable doubt. The only relevant question in assessing the sufficiency of the evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). *Jackson* requires us to look to state law for the substantive elements of the offense, but "the minimum amount of evidence that the Due Process Clause requires to prove the offense is purely a matter of federal law." *Coleman v. Johnson*, 566 U.S. 650 (2012) (internal quotation marks omitted). *Jackson* claims also "face a high bar in federal proceedings because they are subject to two layers of judicial deference." *Id.* at 651. In the first layer, a state appeals court reviewing the sufficiency of the evidence sets aside the jury's verdict

"only if no rational trier of fact could have agreed with the jury." *Id.*  In the second layer, a federal court grants habeas relief only upon a finding that the state court's rejection of a sufficiency of the evidence claim was "objectively unreasonable." *Id.*  Under *Jackson's* sufficiency-of-the-evidence standard, juries have broad discretion in deciding what inferences to draw from the evidence presented at trial, requiring only that they "draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319.

Viewing the evidence in the light most favorable to the State, the Mississippi Court of Appeals concluded that the jury heard sufficient evidence from which it could rationally infer that Wise was guilty of manslaughter despite his self-defense theory.  The court explained:

> Again, Wise argues that the State failed to provide evidence to contradict his theory of self-defense. The jury was instructed on deliberate-design murder, culpable-negligence manslaughter, and self-defense. The statutory elements of culpable-negligence manslaughter are "an unlawful killing by the culpable negligence of another." *Ramage v. State*, 914 So. 2d 274, 276 (Miss. Ct. App. 2005) (citing Miss. Code Ann. § 97-3-47 (Rev. 2014)). A jury instruction was also given defining culpable negligence as "such gross negligence as to evince a wanton or reckless disregard for the safety of human life, or such an indifference to the consequences of an act under the surrounding circumstances as to render such conduct tantamount to willfulness." According to Wise's testimony, he fired an "initial burst" of shots over his left shoulder then continued to fire at Brown when Brown ran away. Such actions have been deemed sufficient to support a culpable-negligence manslaughter conviction. *See Tait v. State*, 669 So.2d 85, 90 (Miss. 1996); *Jernigan v. State*, 305 So.2d 353, 354 (Miss. 1974); *Harried v. State*, 773 So.2d 966, 969 (Miss. Ct. App. 2000); *Towner v. State*, 726 So.2d 251, 254-55 (Miss. Ct. App. 1998). This issue is without merit.

*Wise*, 263 So.3d at 675.

Though not cited in its analysis, the state court's resolution of this issue was neither contrary to, nor an unreasonable application of, *Jackson.*  On the contrary, the

jury's construction of the evidence was reasonable, and its resulting decision to find Wise guilty of manslaughter beyond a reasonable doubt under Mississippi law was rational. Wise has presented nothing in his habeas petition to overcome the deference afforded the state court's decision. *Knight v. Banks*, No. 20-60226, 2021 WL 4301264, at *2 (5th Cir. May 19, 2021) ("Moreover, when a state prisoner presents an insufficiency-of-the-evidence claim in federal habeas, the court must apply this standard of review through the doubly deferential lens of the relitigation bar found in 28 U.S.C. § 2254(d)(1)."). No relief is warranted on this claim.

### Ground Three (Speedy Trial Right)

In ground three, Wise alleges that he was denied the "statutory" right to a speedy trial. This court need only concern itself with whether the Petitioner's constitutional right to a speedy trial was violated because a violation of a state speedy-trial law by a state court is non-cognizable on habeas review. *Millard v. Lynaugh*, 810 F.2d 1403, 1406 (5th Cir. 1987).

A defendant's constitutional right to a speedy trial "attaches at the time of arrest or indictment, whichever comes first." *Dillingham v. United States*, 423 U.S. 64, 65, 96 S. Ct. 303, 46 L. Ed. 2d 205 (1975). In making this assessment, courts consider whether the defendant is "'formally charged with a crime or actually restrained in connection with that crime.'" *Cowart v. Hargett*, 16 F.3d 642, 646 (5th Cir. 1994) (quoting *Dickerson v. Guste*, 932 F.2d 1142, 1144 (5th Cir. 1991) (5th Cir. (1991)). Once the constitutional right to a speedy trial accrues, a determination of whether the right has been violated requires a careful balancing of four factors: (1) the length of delay, (2) the reason for the

12

delay, (3) the assertion of the right, and (4) the prejudice to the defendant. *Barker v. Wingo*, 407 U.S. 514, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972); *Leachman v. Stephens*, 581 F. App'x 390 (5th Cir. 2014). No single factor is determinative in the analysis, and AEDPA "requires us to give the widest of latitude to a state court's conduct of its speedy-trial analysis." *Amos v. Thornton*, 646 F.3d 199, 205 (5th Cir. 2011).

Balancing the four *Barker* factors, the Mississippi Court of Appeals concluded that Wise's speedy trial claim lacked merit. The undersigned submits this finding was not contrary to or an unreasonable application of clearly established federal law.

### *Length of the delay*

To trigger a speedy-trial analysis, a defendant must show that the delay "between accusation and trial has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay." *Doggett v. United States*, 505 U.S. 647, 651–52, 112 S. Ct. 2686, 120 L. Ed. 2d 520 (1992). "If the accused makes this showing, the court must then consider, as one factor among several, the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim." *Id.*

In assessing the length of the delay here, the Mississippi Court of Appeals noted that the "exact date of Wise's arrest is unclear—sometime in April 2015—but he was indicted on June 26, 2015, and his trial finally began on February 7, 2017. *Wise*, 263 So. 3d at 672. Because this delay is sufficient under both state and federal law to trigger full consideration of the other *Barker* factors, the delay is presumptively prejudicial and was rightly weighed in Wise's favor. *See Amos*, 646 F.3d at 206 ("bare minimum required to trigger a *Barker* analysis is one year" in the Fifth Circuit); *State v. Woodall*, 801 S0.2d

678, 682 (Miss.2001) (in Mississippi, the supreme court has generally held that a delay of eight months or longer is "presumptively prejudicial.") (citations omitted).

### *Reason for the delay*

The second *Barker* factor primarily considers "which party is more responsible for the delay." *L. v. Stephens*, 536 F. App'x 409, 413 (5th Cir. 2013). Not all reasons for delay are assigned equal weight. "At one extreme, a deliberate delay to disadvantage the defense is weighted heavily against the state. At the other end of the spectrum, delays explained by valid reasons or attributable to the conduct of the defendant weigh in favor of the state. Between these extremes fall unexplained or negligent delays, which weigh against the state, 'but not heavily.'" *Goodrum v. Quarterman*, 547 F.3d 249, 258 (5th Cir. 2008) (internal citations and quotations marks omitted). Delays caused by overcrowded courts "should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." *Barker*, 407 U.S. at 531.

The record here reflects that the trial court continued the trial sua sponte five times over the course of one year, between December 9, 2015, and December 19, 2016. The defense moved to dismiss the indictment for lack of speedy trial, but the trial court denied the motion, citing, among other things, its "heavy criminal trial calendar" as the "largest county in the State." Wise claims that this was a "false excuse," but he has shown no prejudice as the Mississippi Court of Appeals weighed this factor, though slightly, against the State.

### *Assertion of the right*

The third factor is whether Wise diligently asserted his speedy trial right by moving to dismiss on this basis.  Vigorous and timely assertions of the speedy trial right "receive strong evidentiary weight, while failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial."  *Amos*, 646 F.3d at 207 (internal quotation marks omitted).  "This is because the vigorousness with which a defendant complains about the delay will often correspond to the seriousness of the deprivation."  *Goodrum*, 547 F.3d at 259 (citing *Barker*, 407 U.S. at 531–32).

That said, the Fifth Circuit has "long warned that a motion to dismiss, as opposed to a request for a prompt trial, is 'not a valid demand for a speedy trial.'"  *Speer v. Lumpkin*, 824 F. App'x 240, 245 (5th Cir. 2020) (quoting *Cowart*, 16 F.3d at 647; *see also United States v. Harris*, 566 F.3d 422, 432 (5th Cir. 2009) ("A motion to dismiss the indictment, particularly when, as here, it is filed over two years after the indictment, is not evidence of a [desire to be tried promptly.]"). Because the Mississippi Court of Appeals rightly observed that Wise's "demand for dismissal for violation of the right to speedy trial is not the equivalent of a demand for speedy trial," this factor was properly weighed in the State's favor.

### *Prejudice*

The final element in the *Barker* analysis is whether Wise was prejudiced by the pretrial delay.  Of all the factors, the prejudice factor is "the most difficult to evaluate qualitatively and quantitatively." *United States v. Greer*, 655 F.2d 51, 53 (5th Cir. 1981). Because the first three factors do not weigh heavily in his favor, Wise must make an

affirmative showing of actual prejudice. *Laws*, 536 F. App'x at 414; *Amos*, 646 F.3d at 208. For while the delay here was sufficient to require a full *Barker* analysis, it was not long enough to relieve Wise of this burden.[3] Prejudice may be established in three ways: (1) proof of oppressive pretrial incarceration; (2) proof of anxiety and concern of the accused; and (3) proof that the defense was impaired by the delay. *Barker*, 407 U.S. at 532. "Of these, the most serious is the last because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Speer*, 824 F. App'x at 245 (citing *Barker*, 407 U.S. at 532).

Wise does not demonstrate, let alone assert, how he was prejudiced by the pretrial delay in the instant petition. On direct appeal, however, he asserted that he was unable to complete his education "due to the amount of bond." But the "heart of the prejudice inquiry" is whether the delay impaired the defense, not whether Wise, who testified he only sold drugs to put himself through school, could continue his education before he was convicted. *Speer*, 824 F. App'x at 246. Wise also claimed the pretrial delay prejudiced him because witnesses were unavailable by the time of trial. But as the court observed on direct appeal, Wise also does not identify any witnesses unavailable because of the pretrial delay, nor does he specify the substance of their testimony. *Wise*, 263 So. 3d at 673. In short, Wise presents nothing in his habeas petition to overcome the deference afforded the state court's rejection of his speedy trial claim.

---

[3] *See United States v. Frye*, 372 F.3d 729, 738 (5th Cir. 2004) (recognizing that federal courts generally presume prejudice only when the delay exceeds five years); *Doggett,* 505 U.S. 647, 657 (finding 8 ½-year delay caused solely by government negligence was long enough that affirmative proof of particularized prejudice was not essential.)

**Ground Ten (Criminal History)**

In ground ten, Wise asserts that he was deprived of due process and a fair trial because the State failed to produce the victim's criminal history, specifically a copy of the National Crime Information Center ("NCIC") report, in violation of Mississippi's discovery rules.  Wise claims that the trial court "made it very clear, and the district attorney agreed, that [he] was entitled to the requested NCIC and/or criminal history record of Brown in preparation of his defense . . ."  Wise is mistaken, however.

While the record reflects that the trial court ordered that the crime-scene photos and the victim statements be produced, the court also ruled that "the State is not burdened with producing an NCIC Report."  *See* Uniform Circuit and County Court Rule 9.04(A)(2) (replaced by Mississippi Rules of Criminal Procedure, effective July 1, 2017); *Wise*, 263 So. 668 at 672.  *See also Fuller v. State*, 910 So. 2d 674, 678 (Miss. Ct. App. 2005) ("The trial court correctly held that the State had not violated the discovery rules by failing to disclose the NCIC report until the day of the trial because the State was not required to discover the report at all under URCCC 9.04, which lists the State's required discovery."). Though Wise alleges this was a deprivation of due process and a fair trial, his claims are based on a purported discovery violation.  But there is no general federal constitutional right to discovery in a criminal case, and thus a claim that a State violated state discovery rules is not cognizable in federal habeas review. *Weatherford v. Bursey,* 429 U.S. 545, 559, 97 S. Ct. 837, 51 L.Ed.2d 30 (1977); ; *Brooks v. Cain*, No. CIV. A. 06-1869, 2007 WL 2990935, at *10 (E.D. La. Oct. 11, 2007), *vacated,* No.

CIV.A. 06-1869, 2009 WL 3254338 (E.D. La. Aug. 6, 2009); *Burns v. Lafler*, 328 F.

Supp. 2d 711, 723 (E.D. Mich. 2004).

### Remaining Grounds (Ineffective Assistance of Counsel)

As noted *supra*, with nearly every claim in his petition, Wise alleges that he was

deprived of due process and ineffective assistance of counsel.  Wise asserts that his

attorney, who served as both his trial and appellate counsel, was constitutionally deficient

in violation of his Sixth Amendment right to counsel.  In total, he raises eight ineffective

assistance of counsel claims, all of which were rejected by the Mississippi Supreme Court

on state post-conviction review.  The undersigned submits that there was no unreasonable

application of *Strickland* or its progeny in this determination.

To establish a claim for ineffective assistance of counsel, a petitioner must show

(1) "counsel's representation 'fell below an objective standard of reasonableness,'" and

(2) "but for his counsel's deficient performance, there is a reasonable probability that the

outcome of the proceeding would have been different." *Blanton v. Quarterman*, 543 F.3d

230, 235 (5th Cir. 2008) (quoting *Strickland v. Washington*, 466 U.S. 668, 688, 694, 104

S. Ct. 2052, 80 L. Ed. 2d 674 (1984)).  It is not enough to establish a deficiency and

resulting prejudice, however. *United States v. Lewis*, 786 F.2d 1278, 1281 (5th Cir.

1986).  To warrant habeas relief, Wise must show that the Mississippi Supreme Court's

adjudication of his ineffective assistance of counsel claim was an unreasonable

application of *Strickland*.  Thus, under the limited scope of AEDPA review, even if this

Court found the Mississippi Supreme Court's application of *Strickland* was incorrect, we

could not recommend granting habeas relief unless we found that court's application of

*Strickland* to be objectively unreasonable or an actual misapplication of the law. The

United States Supreme Court has explained that, under the AEDPA, federal habeas

corpus review of an ineffective assistance of counsel claim is in fact doubly deferential:

> The pivotal question is whether the state court's application of the
> *Strickland* standard was unreasonable. This is different from asking
> whether defense counsel's performance fell below *Strickland's* standard.
> Were that the inquiry, the analysis would be no different than if, for
> example, this Court were adjudicating a *Strickland* claim on direct review
> of a criminal conviction in a United States district court. Under AEDPA,
> though, it is a necessary premise that the two questions are different. For
> purposes of § 2254(d)(1), an unreasonable application of federal law is
> different from an incorrect application of federal law. A state court must be
> granted a deference and latitude that are not in operation when the case
> involves review under the *Strickland* standard itself.

*Harrington v. Richter*, 562 U.S. 86, 101, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011)

(citation omitted). "[S]urmounting *Strickland's* high bar is never an easy task and

[e]stablishing that a state court's application of *Strickland* was unreasonable under

§ 2254(d) is all the more difficult." *Vasquez v. Thaler*, 505 F. App'x 319, 326 (5th Cir.

2013) (quoting *Premo v. Moore*, 562 U.S. 115, 122, 131 S. Ct. 733, 178 L. Ed. 2d 649

(2011) (internal quotation marks and citations omitted)).

In his first allegation of ineffective assistance, Wise asserts that counsel was

ineffective for failing to challenge the sufficiency of the evidence supporting his

manslaughter conviction, both at trial and on direct appeal. Contrary to what he asserts,

however, the record reflects that counsel moved for a directed verdict and judgment

notwithstanding the verdict on this basis at trial, but both motions were denied. Counsel's

subsequent challenge on appeal was found to lack merit as the court concluded that the

jury heard sufficient evidence from which it could rationally infer that Wise was guilty of

manslaughter despite his self-defense theory. The court specifically noted that Wise's testimony that he fired "an initial bursts of shots over his left shoulder then continued to fire as Brown ran away" was sufficient to support a culpable-negligence manslaughter conviction under state law. *Wise*, 263 So. 3d at 675 (citing *Tait*, 669 So. 2d at 90; *Jernigan*, 305 So. 2d at 354; *Harried*, 773 So. 2d at 969 (Miss. Ct. App. 2000); *Towner*, 726 So. 2d at 254–55). Wise's claim, therefore, that counsel was ineffective for failing to mount a challenge to the sufficiency of the evidence is belied by the record. That counsel did not succeed in his efforts does not render his performance constitutionally ineffective. *Avila v. Quarterman*, 560 F.3d 299 (5th Cir. 2009); *Martinez v. Dretke*, 404 F.3d 878, 885 (5th Cir. 2005). Wise has presented nothing in his habeas petition to overcome the deference afforded the state court's decision.

Second, Wise asserts in a related claim, that counsel was ineffective for failing to object to the culpable-negligence manslaughter instruction. But the "[f]ailure to raise meritless objections is not ineffective lawyering; it is the very opposite." *Wood*, 503 F.3d at 413. The Mississippi Supreme Court has long held that a defendant has a right to an instruction on "a lesser crime which could be found to have been committed on the evidence before the jury." *Gangl v. State*, 539 So. 2d 132, 136 (Miss. 1989). The instruction defined culpable negligence as "such gross negligence as to evince a wanton or reckless disregard for the safety of human life, or such an indifference to the consequences of an act under the surrounding circumstances as to render such conduct tantamount to willfulness." *Wise*, 263 So. 3d at 675. As the appeals court found, there was sufficient evidence to support a culpable-negligence manslaughter conviction,

making it unlikely that an objection to such an instruction would have succeeded. *Turner v. Quarterman*, 481 F.3d 292, 298 (5th Cir. 2007) (there is nothing ineffective in failing to make an objection that would have been meritless).  But even if counsel had kept out a manslaughter instruction, it does not follow that Wise would have been automatically exonerated. *See Geiger v. Cain*, 540 F.3d 303, 309 (5th Cir. 2008).  The jury was also instructed on deliberate-design murder and self-defense.  Given the evidence, counsel may have made the strategic decision that an instruction on a lesser-included offense was preferrable to an all-or-nothing strategy.  That the Mississippi Supreme Court rejected this claim on post-conviction review was not contrary to or an unreasonable application of *Strickland*.

Third, Wise asserts that counsel was ineffective for failing to "protect" his right to a speedy trial, but here again, the state court record does not support Wise's assertion. The record establishes that counsel asserted a speedy trial violation in pretrial proceedings and on appellate review.  But as noted, rather than make a formal demand for a speedy trial, counsel moved to dismiss on this basis. As a result, the appeals court weighed this factor in favor of the State in its speedy trial analysis.  Still, even if counsel had requested a trial date rather than dismissal, Wise has not shown that the trial court would have granted his speedy trial motion. *See Richter*, 562 U.S. at 112 (to show prejudice, the "likelihood of a different result must be substantial, not just conceivable").  Nor has he shown that he was prejudiced by the pretrial delay.  Wise is not entitled to habeas relief on this claim as the state's court rejection of this claim was not contrary to, or an unreasonable application of federal law.

Fourth, Wise alleges that counsel was ineffective for failing to exclude evidence of the drug transaction that precipitated the shooting. First, Wise has not shown that this was not a matter of trial strategy. Throughout trial, defense counsel repeatedly stressed the victim's anger and aggression over the drug deal gone bad to bolster its claim that Wise had to act in self-defense, while also highlighting Wise's claim that he only sold drugs "to put myself though college." Still, Wise contends that counsel should have lodged an objection based on other crimes evidence under Miss. R. Evid. 404(b);[4] sought a ruling on the admissibility of the evidence under Miss. R. Evid. 403;[5] and, requested a limiting instruction under Miss. R. Evid. 105. At any rate, "the burden to show that counsel's performance was deficient rests squarely on the defendant." *Crawford v. Cain,* 55 F.4th 981, 990 (5th Cir. 2022) (quoting *Burt v. Titlow*, 571 U.S. 12, 22–23, 134 S.Ct. 10, 187 L.Ed.2d 348 (2013)). Wise has not made this showing here.

For example, the record shows that counsel successfully moved to exclude any prior arrests that Wise may have had in pretrial proceedings. Counsel subsequently agreed, however, that the State was entitled to introduce evidence of the drug transaction because it was "so connected [to the murder] that it would be impossible to tell the story." *See Davis v. State*, 40 So. 3d 525, 530 (Miss. 2010) ("[T]he State has a legitimate

---

[4]  Though not specifically cited by Wise, Miss. R. Evid. 404(b) provides that evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

[5]  Miss. R. Evid. 403 provides that "the court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

interest in telling a rational and coherent story of what happened ...[, and w]here

substantially necessary to present to the jury the complete story of the crime, evidence or

testimony may be given even though it may reveal or suggest other crimes."

(quoting *Brown v. State*, 483 So. 2d 328, 330 (Miss. 1986)). Though the admissibility of

other crimes evidence is generally inadmissible, Mississippi has carved out the

exceptions below:

> Proof of another crime is admissible where the offense charged and that
> offered to be proved are so interrelated as to constitute a single transaction
> or occurrence or a closely related series of transactions or occurrences.
> Such proof of another crime is also admissible where it is necessary to
> identify the defendant, where it is material to prove motive, and there is an
> apparent relation or connection between the act proposed to be proved and
> that charged, where the accusation involves a series of criminal acts which
> must be proved to make out the offense, or where it is necessary to prove
> scienter or guilty knowledge.

*Hogan v. State*, 580 So.2d 1275, 1277 (Miss. 1991).  Accordingly, counsel could have

reasonably concluded that any attempts to exclude, filter or otherwise limit evidence of

the drug transaction would have been futile.  The probative value of such evidence, which

so closely connected to the charged offense that the State could not accurately present its

case without referencing it, outweighed any prejudicial harm.  This is so even though no

on-the-record balancing test was performed, and no limiting instruction was given.  *See*

*Stone v. State*, 94 So. 3d 1078, 1089 (Miss. 2012) (if evidence is admissible under Rule

404(b), "it still must pass through Rule 403, which is the 'ultimate filter through which

all otherwise admissible evidence must pass.'")(quoting *McKee v. State*, 791 So.2d 804,

810 (Miss. 2001)); *Horton v. State*, 253 So. 3d 334, 341 (Miss. Ct. App. 2018) (failure to

conduct an on-the-record balancing test under Rule 403 harmless unless evidence patently prejudicial).

Applying AEDPA's deferential standard of review, the state court did not unreasonably conclude that *Strickland* was not met on this claim. And though Wise asserts in passing that the admission of this evidence was a due process violation, this is so only if the evidence was "so unduly prejudicial that it renders the trial fundamentally unfair." *Wood*, 503 F.3d at 414 (quoting *Payne v. Tennessee*, 501 U.S. 808, 825, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991)); *Story v. Collins*, 920 F.2d 1247, 1254 (5th Cir. 1991). Such was not the case here.

As his fifth claim, Wise asserts that counsel was ineffective for failing to seek a hearing on the suppression of his confession, which was purportedly obtained in violation of the right to counsel. The record reflects that counsel filed a pretrial motion to this effect but withdrew the motion before trial. Respondent contends this was trial strategy. Wise has not shown otherwise, and "[i]t is his burden to do so." *Guidry v. Lumpkin*, 2 F.4th 472, 493 (5th Cir. 2021). Indeed, the record shows that counsel used Wise's confession—that he acted in self-defense—to support his self-defense theory throughout trial, referring to it as a "self-defense confession." The jury was confronted with other evidence that undermined his self-defense claim, i.e., forensic evidence showing that Brown was shot in the back, and witness testimony that after shooting Brown, Wise said: "You ain't seen nothing. You don't know nothing." Reasonable trial strategy does not constitute ineffective assistance of counsel simply because it did not succeed. *Avila*, 560 F.3d 299. *See Martinez*, 404 F.3d at 885 ("A conscious and informed decision

on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness.") (internal quotation marks and citation omitted).  Given AEDPA's deferential standard of review, the state court's ruling that his ineffective assistance-of-counsel claims lacked merit was not an unreasonable application of, or contrary to, *Strickland*.

Sixth, Wise alleges that counsel was ineffective for failing to seek a continuance after "the trial judge and the district attorney agreed" that he was entitled to the victim's NCIC report.  But as noted *supra*, Wise's claims are contradicted by the record.  There was no such agreement. To the contrary, the trial court ruled that local discovery rules did not require the State to produce the NCIC.  Thus, counsel could have reasonably determined that he had no basis to seek a continuance. *See also Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990) ("This Court has made clear that counsel is not required to make futile motions or objections.").  Wise's assertion that counsel was also ineffective for failing to "correct the court on appeal regarding [the] disclosure of [the] victim's criminal background" is just as unavailing.  Under *Strickland*, "[a]ppellate counsel who files a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Vollmer v. Davis*, 673 F. App'x 406, 413 (5th Cir. 2016) (quoting *Smith v. Robbins*, 528 U.S. 259, 288, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000)).  That is what occurred here.  Wise presents nothing in his habeas petition to overcome the deference afforded the state court's rejection of this claim.

Seventh, Wise contends that counsel was constitutionally deficient for failing to ensure that he was afforded *Daubert* protections at trial.  *See Daubert v. Merrell Dow Pharms.*, 509 U.S 579 (1993).  Wise points to the State medical examiner's testimony that the victim's bullet wounds suggested that he was shot twice in the back.  According to Wise, such testimony, was "inherently harmful and prejudicial" because it contradicted **his** testimony that he shot the victim in the chest in self-defense.  Yet Wise argues that the pathologist was not questioned about the techniques or standards used to make such a determination, and his testimony was erroneously admitted, without objection from counsel, or a *Daubert* ruling by the court.

As a threshold matter, insofar as Wise argues that the trial court's admission of the forensic pathologist's testimony was erroneous, a federal habeas court does not sit to review the admissibility of evidence under state law unless it rendered the trial fundamentally unfair—a showing that Wise has not made for the reasons asserted here. Contrary to what Wise claims, counsel's first question on cross-examination asked the pathologist to clarify the difference between entry and exit wounds, specifically how the determination is made.  In response, the pathologist testified that entry and exit wounds "tend to tear the skin," while entry wounds, like those in the victim's back, have an "abrasion margin or ring around the entrance wound itself."  In favor of the defense, the pathologist also acknowledged on cross-examination that he did not know if the victim's wounds were the "result of self-defense" or "what went down or what occurred prior to the [victim] being shot."  He also acknowledged that toxicology results revealed the victim had alcohol in his system.  *See Harrington*, 562 U.S. at 111 (finding no

26

deficient performance where defense counsel's cross-examination of the state's experts "elicited concessions" from the experts and drew "attention to weaknesses in their conclusions").

But even if counsel's performance was deficient as Wise claims, he has not shown that a *Daubert* challenge would have succeeded, or that the outcome would have been different if only one had been made. Along with the pathologist's testimony, the jury was presented with autopsy photos of the victim's gunshot wounds; the photos were consistent with the pathologist's testimony that the victim was shot in the back. They also heard testimony from the crime scene investigator that the location of the shell casings in the parking lot was consistent with the shooter moving towards the victim's vehicle, and that the shell casings could have only come from Wise's 90-mm gun (and not the 40-caliber handgun that Wise claimed the victim was holding to the back of his neck). The victim's gun, rather, was found still holstered on the floorboard of the victim's vehicle. Moreover, consistent with the pathologist's testimony that the victim was shot in the back, Wise himself testified that after firing an initial burst of shots, he "continued to fire as [the victim] ran," to "make sure [he] was safe." Given the doubly deferential standard of review, the undersigned submits that the rejection of this claim was not contrary to or an unreasonable application of *Strickland*, nor an unreasonable determination of the facts.

As his eighth and final ineffective assistance of claim, Wise claims that counsel was ineffective for failing to request a flight instruction. Yet Wise cannot establish that counsel's performance was deficient or that he was prejudiced. Although evidence of

flight is generally admissible as "evidence of consciousness of guilt," *States v. State*, 88

So. 3d 749, 758 (Miss. 2012), such an instruction is warranted under Mississippi law only

when a two-prong test is met:  the flight must be both "*unexplained* and somehow

probative of guilty or guilty knowledge." *Drummer v. State*, 167 So. 3d 1180, 1188

(Miss. 2015) (emphasis added) (quoting *Reynolds v. State*, 658 So. 2d 852, 856 (Miss.

1995)).  The first prong is not met here.  Wise has offered an alternative explanation for

leaving the scene—he went to pick up his girlfriend from work and then drove to Fayette,

Mississippi, where he is originally from.  *Ford v. State*, 206 So. 3d 486, 493 (Miss. 2016)

("It is only when the defendant fled for some reason independent of the crime that the

flight is considered to be explained.") (internal quotation marks and citation omitted).  He

testified that he did not remain at the scene because he wasn't sure whether the victim

had been shot and feared retaliation.

Moreover, the undersigned submits that counsel may have also reasonably

concluded that a flight instruction would not have been granted.  Around the time of

defendant's trial and appeal, the Mississippi Supreme Court cautioned lower courts

against the use of a flight instruction, noting the "questionable wisdom of granting it."

*Ervin v. State*, 136 So. 3d 1053, 1060 (Miss. 2014) ("[T]he use of the flight instruction in

this state can be described in one word—'dangerous.'")  *Id.* quoting (*Randolph v. State*,

852 So. 2d 547, 567 (Miss. 2002) (Carlson, J., specially concurring, joined by Smith, P.J.,

Waller, and Cobb, JJ.)) ("[A] trial court, by giving a flight instruction, simply puts itself

in a position of possibly placing a reversible error in an otherwise clean record. If a trial

court persists in giving a flight instruction, . . . it [should] do so with great caution.").

*States*, 88 So. 3d at 759 (Carlson, P.J., specially concurring) ("[W]ith the prosecutors having been duly warned on multiple occasions about the danger of submitting flight instructions, there can be no legitimate hue and cry from the State in the future if this Court . . . reverses a criminal conviction based on the trial court's improper grant of a flight instruction, which had been improvidently submitted by the prosecutor.").

In sum, having applied the double deference federal courts owe to the state court's determinations, the record reflects that Wise received effective representation and there is no reasonable probability that the result of his prosecution would have been more favorable if only counsel had performed as Wise argues. None of the arguments raised in his eight ineffective assistance of counsel claims establish that the Mississippi's Supreme Court's rejection of them was contrary to or an unreasonable application of *Strickland*.

For all these reasons, it is the recommendation of the undersigned United States Magistrate Judge that this habeas petition should be dismissed with prejudice.

## NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to Rule 72(a)(3) of the *Local Uniform Civil Rules of the United States District Courts for the Southern District of Mississippi*, any party may serve and file written objections within 14 days after being served with a copy of this Report and Recommendation. Within 7 days of the service of the objection, the opposing party must either serve and file a response or notify the District Judge that he or she does not intend to respond to the objection.

The parties are hereby notified that failure to file timely written objections to the proposed findings, conclusions, and recommendations contained within this report and

recommendation, shall bar that party from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, except upon grounds of plain error.  28 U.S.C. § 636, Fed. R. Civ. P. 72(b) (as amended, effective December 1, 2009); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996).

Respectfully submitted on July 31, 2023.

s/ LaKeysha Greer Isaac
UNITED STATES MAGISTRATE JUDGE